IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **IBIM GEORGE HARRY,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 3:14 - cv- 0482 |
| § | | |
| § | | |
| **DALLAS HOUSING AUTHORITY,** § | | |
| Defendant. § | | |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

NOW COMES Plaintiff and files this First Amended Original Petition pursuant to Rule 15(1) (B), Federal Rules of Civil Procedure in response to Defendant's First Amended Answer served on Plaintiff by mail on June 4, 2014 and is filed within 21 days of said date of service on Plaintiff.

### INTRODUCTION

1.   Plaintiff Ibim George Harry "Harry" files this complaint against Dallas Housing Authority "DHA" and respectfully claims damages for violation of Title VII of the Civil Rights Act of 1964 and 42 USC § 2000e et seq., and for wrongful dismissal as a result of said violations.

### JURISDICTION AND VENUE

2.   This Court has original jurisdiction under 28 USC § 1331 because the cause of action in this suit arises under the laws of the United States.

3.   Venue is proper under 28 USC § 1391 because the defendant has its principal office in Dallas County and all the events leading up to this suit took place in Dallas County Texas.

### PARTIES

4. Plaintiff Ibim George Harry is an individual who is domiciled in Harris County, Texas and resides at 9919 Richmond Ave., #1222, Houston, Texas 77042.

5. Defendant Dallas Housing Authority is a State Government Agency created by legislature under the laws of the state of Texas and has been served through its General Counsel Gregory Mays, at 3939 North Hampton Road, Dallas, Texas 75212. Defendant is an employer of more than 500 employees.

## STANDING

6. Harry has standing to bring this suit because he belongs to the protected class for national origin discrimination being by birth and upbringing, a Nigerian National with an accent typical of Nigerians from the South-South Region of Nigeria.

7. Harry is a black African Male of Nigerian Origin who was discriminated against by the defendant through the actions of two supervisors-Sherry Melvin and Sam Grader who are in the position to influence employment decisions. Sherry Melvin and Sam Grader acting in violation of the statutes within the scope of their employment and during the course of normal work days discriminated against Harry as a result of his race and national origin.

8. Harry met Dallas Housing Authority's legitimate expectations but was wrongfully discharged as a result of his national origin and race. Dallas Housing Authority created allegations of not meeting standards of performance as a pretext for terminating Harry's employment. The true reason for terminating Harry's employment was retaliation for Harry complaining about discrimination on the basis of race and national origin. Hence Harry was terminated within 3 months of his complaint to his supervisors that their conduct was discriminatory. Harry was replaced by Chad Baker, a Caucasian Male upon Harry's termination.

## STATEMENT OF FACTS

10. Harry is a Nigerian Born Male United States Citizen.

11. Harry worked for Defendant from August 2009 until he was wrongfully terminated on or about October 5, 2012.

12. Harry worked as an administrator for defendant and was responsible for supervising 11-12 employees. Harry's duties were not limited to compliance, performance and supervision of a 5,000 Voucher program group of professional section 8 staff as well as the program outcomes they produce. Harry's duties included evaluating the production and performance of the staff under him.

13. For the 3 years prior to working for Dallas prior to being recruited and employed at Dallas Housing Authority, Harry had been one of Houston Housing Authority's top assistant administrators. Chief Executive Officer Mary Ann Russ, who was Harry's director at Houston Housing Authority solicited and recruited Harry as an Administrator on the basis of her personal knowledge of Harry's performance, work standards and ethics which exceeded the legitimate expectations of the employer.

14. Harry started working with Dallas Housing Authority on August 17, 2009. Defendant conducted Harry's first annual evaluation on October 10, 2010. Harry's performance was rated, an "exceeds standards" of 2.5 even though he was met with resistance by his subordinates and had to work without an assistant.

15. Under the supervision of Sam Sally, Harry had an assistant upon arrival in Dallas Housing Authority whose name was Udell Jasso. Soon after Sam and Sherry took over as Harry's supervisors, Defendant fired Udell Jasso. Harry was tasked with cylinder 3 without an assistant administrator when all other administrators with similar sized teams, had an assistant

administrator. After Harry was moved to Cylinder 2, Harry was replaced by Giselda Prado, a white American of Hispanic origin who was assigned an assistant -Cindy Quezeda immediately.

16. Harry struggled against opposition and finally gained the trust and respect of Cylinder 3 staff. Nona Eath, Harry's first African American Assistant when Harry was moved to Cylinder 2 -Regular voucher said "Harry is aggressive, arrogant and dumb because he is a Nigerian." Sherry Melvin and Sam Grader condoned said comment. Sam Grader and Sherry Melvin presented Harry to Harry's subordinates as aggressive and arrogant and constantly condemned Harry's manner of speaking as "agitated, excited, animated, intimidating and aggressive". Sherry Melvin ordered Harry to "communicate more in writing instead of speaking since Harry's writing was less offensive".

17. Defendant knew about the discrimination against Harry by his subordinates and co-workers because when Harry first moved from Houston to Dallas, Clarence Davis, an employee under Harry's supervision assaulted Harry and called Harry "A Fucking African" and repeatedly told Harry to go back home to Africa. He was fired by Samuel Sally, Harry's former supervisor for said conduct. Sam Sally was transferred to another department thereafter. Sam Grader and Sherry Melvin became Harry's immediate supervisor from that point on.

18. Instead of taking action to stop said conduct and the attitude of the employees, Sherry Melvin continued the discrimination against Harry by calling Harry into her office and telling Harry that because Harry is Nigerian born "your eyes pop out when you speak and your nose widens and this is intimidating". When Harry explained that he was not trying to make his eyes pop out or to widen his nose, Sherry Melvin responded "you have been in the United States for a long time now, why can't you adapt." Because Sherry Melvin was also discriminating against

Harry, some other African American subordinates mimicked Harry's accent and pretended not to understand Harry when he spoke.

19. Defendant's discrimination against Harry on the basis of race and national origin was such that even in his role as a supervisor, unlike other administrator's;

a. Harry was not permitted to terminate the employment of his underperforming subordinates because he was Nigerian. Chasity Lewis was an employee with a very high error rate under Harry's supervision. Harry recommended that Chasity Lewis be terminated but Sherry Melvin would not permit it.

b. Harry was blamed for the errors of his subordinates when Sherry Melvin went behind Harry's back to give Lewis more files after Harry instructed Lewis not to work on any new files until he had checked her errors. Chasity Lewis made multiple errors and Sherry Melvin then called Harry into her office and blamed him for Lewis's errors.

c. Sherry Melvin discriminated against Harry and intimidated Harry by calling him into her office and blamed him for not checking all of Chasity Lewis's errors. When Harry informed Sherry Melvin that he had checked Lewis's errors, Melvin called Harry a liar and then wrote a report alleging that he had given her three different answers without stating in the report what the alleged answers were. Harry took a leave of absence from the strain of constant attacks by Sherry Melvin and her support from Sam Grader and went to Nigeria. When Harry was away, Defendant acted on the same complaints about Chasity Lewis that Harry had been making to terminate Lewis's employment at the behest of Harry's African American Assistant because she was not Nigerian.

d. After Harry conducted the annual evaluations of Harry's team, unlike any other administrator, Sherry Melvin sent out emails soliciting complaints from any employee who did

not like their evaluation under Harry's supervision. After hours of intimidation about each evaluation, Sherry Melvin ordered Harry to re-do the evaluations for his team and make each member of his team's performance review reflect a meets expectations standard even when they did not.

20. On August 10, 2012, on the pretext of conducting an evaluation, Sherry Melvin kept Harry in her office from 12:30PM to Midnight questioning him about every alleged whimsical complaint made by unnamed subordinates until Harry finally broke down and complained to Sherry Melvin and Sam Grader that Melvin and Grader's treatment of Harry were discriminatory. Harry requested a transfer to another department and was denied said transfer because of his race and national origin.

21. Defendant's Annual evaluations apply levels of performance as 2.5 - 3.00 = Exceeds Standards, 1.5 – 2.49 = Meets Standards, 1.00 – 1.49 = Does Not Meet Standards. On August 10 2012, Sherry Melvin evaluated Harry and gave him a 1.60 which by said scale is a Meets Standard performance review. Even though, the evaluations are meant to be annual only, Sherry Melvin re-evaluated Harry on August 14, 2012 and told Harry that she was giving Harry the performance rating that Sam Grady allowed her to. When Harry was given the evaluation it contained a 1.71 performance rating which on Dallas Housing Authority's scale is still a Meets Standard performance review. On October 5, 2013 even though Harry had met his employers' legitimate expectations by earning a meets standard performance review, Defendant wrongfully terminated Harry's employment for "Not meeting standards" on October 5, 2012. Harry was discharged despite his qualifications and performance and following his discharge, he was replaced by a Caucasian male by the name of Chad Baker with comparable qualifications who is neither Nigerian nor of the Black racial parts of Africa.

22. Defendant treated Harry differently due to his national origin by failing to follow defendant's internal policy of moving or demoting a supervisor when the supervisor is alleged to have a "does not meet" expectations performance level.

23. Defendant discriminated against Harry and retaliated against Harry by terminating Harry's employment for not meeting standards when a 1.6 and or a 1.71 are by Dallas Housing Authorities levels of performance, both "meets standards" levels of performance.

24. Defendant continued to intimidate Harry by applying its internal policies differently to Harry and placed him on a training program under his Individual Development Plan but terminated his employment before he could complete the training on the pretext that Harry failed to meet standards.

25. Harry has suffered physical and emotional anxiety, stress, and continued low self-esteem. Harry was so troubled that he had to see a therapist to deal with the humiliation, intimidation, discrimination, harassment and retaliation meted out to Harry by Sherry Melvin and Sam Grader acting in their roles as supervisors in the position to make employment decisions with regard to Harry.

26. Defendant terminated Harry's employment less than 2 months after he made a discrimination complaint against his supervisors. Defendant wrongfully terminated Harry's employment notwithstanding the fact that he was doing everything he was asked to do and performed to a "meets standard" level which is defendant's legitimate expectation, because of his race and national Origin and because he had complained to Sherry Melvin and Sam Grader that their conduct was discriminatory.

**CONDITIONS PRECEDENT**

27. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on November 2, 2012. This charge was dual filed with the Texas Workforce Commission pursuant to those agencies' work sharing agreement. The EEOC issued a right to sue on July 9, 2013.

28. The charge was filed within 180 days after Plaintiff was terminated.

29. More than 180 days have passed since Plaintiff filed his Charge.

30. Plaintiff has timely exhausted all of his administrative remedies.

## CAUSES OF ACTION

### A. NATIONAL ORIGIN DISCRIMINATION

31. Plaintiff incorporates the foregoing paragraphs.

32. Defendant discriminated against Plaintiff because of Plaintiff's national origin.

33. Defendant's actions violated 42 USC § 2000e et seq.

### B. WRONGFUL DISMISSAL

34. Plaintiff incorporates the foregoing paragraphs.

35. Defendant wrongfully terminated Plaintiff's employment because of Plaintiff's national origin and in retaliation for Plaintiff's complaint about Defendant's national origin discrimination against Plaintiff.

36. Defendant's actions violated 42 USC § 2000e et seq.

## DAMAGES

37. Plaintiff incorporates each of the foregoing paragraphs.

38. Defendant's violations of the above statutes entitles Plaintiff to recover from Defendant compensatory damages, attorney's fees, expert witness fees, and court costs.

39. Because Defendant's discrimination on the basis of national origin was malicious and or reckless, Plaintiff is entitled to recover punitive damages from defendant.

40. Plaintiff seeks all damages available to him under the Statute.

## JURY DEMAND

41. Plaintiff hereby demands a trial by Jury.

## REQUEST FOR DISCLOSURE

Pursuant to Federal Rule of Civil Procedure 26, Defendant is hereby requested to disclose all the information or material described in Rule 26 (a) (i) – (iv).

## PRAYER

42. Plaintiff respectfully requests that defendant be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment awarding Plaintiff:

A. Compensatory damages in the form of front pay and back pay including benefits, out of pocket expenses, expenses for psychiatric care and monitoring, expenses for psychological care and counseling, reasonable and necessary medical expenses, mental anguish, inconvenience, loss of earnings, lost benefits and loss of enjoyment of life.

B. Liquidated Damages in the form of damages for malicious and reckless indifference to Plaintiff in publicly humiliating and discriminating against Plaintiff because of his national origin and race.

C. Punitive damages for defendant's especially malicious and reckless act of national origin discrimination.

D. Reasonable and necessary attorney's fees and expert fees.

E. Court Costs

F. Pre- and post-judgment interest at the rate set by law; and

G.      All legal or equitable relief to which Plaintiff is entitled.

DATED THIS 23RD DAY OF JUNE 2014.

>Respectfully submitted,
>
>**U. A. C. OFFOBOCHE LAW FIRM**
>By: _/s/ Cuaoffoboche_
>**Ugalahi Offoboche**
>State Bar No. 24068619
>2331 Gus Thomasson Rd., Suite 128A
>Dallas, Texas 75228
>Telephone No. (214) 515-8028
>Facsimile No. (214) 853- 5708
>clairecutlaw@gmail.com
>**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I certify that on this 23rd day of June, 2014 a true and correct copy of the foregoing Plaintiff's Amended Complaint has been served on opposing Counsel Gerald Bright by facsimile to 972-744-0067.

>_/s/ Cuaoffoboche_
>**Ugalahi Offoboche**