**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON**

| | | |
|---|---|---|
| IBIM HARRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:14-CV-0482-M |
| | § | |
| DALLAS HOUSING AUTHORITY, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is a Motion for Summary Judgment filed by Defendant Dallas Housing

Authority ("DHA") in this national origin discrimination and retaliation lawsuit brought by

Plaintiff Ibim Harry under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

For the reasons stated, Defendant's Motion is granted.

## I.      BACKGROUND

Harry is a black male of Nigerian national origin who was hired by DHA as an

Administrator for its Housing Choice Voucher Program on August 17, 2009.  *See* Pl. MSJ Resp.

App. [Docket Entry #86] at 001, ¶2; Def. MSJ App. [Docket Entry #78] at 002, ¶4.  In that

capacity, Harry led a team of professional Section 8 staff, sometimes called a "cylinder," that

was responsible for ensuring compliance with applicable federal, state, and local laws regulating

public housing agencies.  *See* Pl. MSJ Resp. App. at 002, ¶¶ 9-10. Sherry Melvin became

Harry's direct supervisor in January 2010.  Def. MSJ App. at 002, ¶5.  On his annual evaluation

dated October 10, 2010, Melvin rated Harry's work performance as "exceeds standards." *See* Pl.

MSJ App. at 163-71.

It is undisputed that Melvin held numerous "coaching sessions" with Harry during his tenure at DHA. *See* Def. MSJ App. at 12; Pl. MSJ App. at 3, ¶18.  Melvin contends the meetings were necessary because she received numerous complaints from other employees about Harry's management style, and she had to counsel Harry about the proper ways to document and manage various situations in the workplace. *See* Def. MSJ App. at 3, ¶¶ 6-9; *see also id.* at 12.  Harry disputes Melvin's characterization of their sessions, contending that the complaints of other employees were baseless, and that Melvin used the sessions to criticize and berate him.  *See* Pl. MSJ App. at 3, ¶¶ 18, 21 & 13 ¶¶72-75.  Harry claims Melvin called him "arrogant, animated, aggressive, and intimidating" and criticized his speaking manner and facial expressions.  *Id.* at 3, ¶19.  She allegedly said, "your eyes pop out," "your nose flares" and "your manner of speaking is very offensive to me."  *Id.*, ¶ 20.  He claims she also admonished him to "communicate with people more in writing because it is less offensive."  *Id.*  Harry contends that he began to feel harassed by Melvin's criticism, and came to believe that the harassment was based on his race or national origin.  *Id.*, ¶¶ 21-22.  He contends he complained of discrimination to Sharon Stafford in human resources in 2011, to Vice President Sam Grader in the first quarter of 2012, and to Melvin on August 10, 2012.  *Id.* at 5-6, ¶¶ 37-42.

In or around September 2011, Melvin discovered an unacceptably high level of serious errors in files completed by Chasity Lewis, a staff member in Harry's cylinder. *See* Def. MSJ App. 3, ¶12.  Melvin directed Harry to meet with Lewis to ensure that she knew how to correct the errors and to review the files to verify that the necessary corrections were accurately and timely completed.  *See id.* at 3, ¶ 14-15; *see also id.* at 9.  On November 8, 2011, Melvin held a follow-up meeting with Harry about his review of Lewis's files, which Melvin contends was necessary because Harry had not provided her with requested written updates. *See id.* at 4, ¶¶ 17-

18, 22.  During the meeting, Melvin also addressed new claims by Lewis that Harry was undermining her performance by not reviewing her work. *See id.*, ¶19.  According to Melvin, Harry became defensive and was borderline insubordinate.  *Id.* at 11.  On November 10, 2011, Melvin issued an Employee Discipline Report and Final Written Warning to Harry for poor performance in connection with the Lewis issues and improper attitude at the November 8 meeting.  *Id.*

On his annual evaluation dated August 10, 2012, Melvin rated Harry's work performance as "below standards."  Def. MSJ App. at 19-25; *see also id.* at 26.  DHA contends that the low rating prompted Melvin to issue another Employee Discipline Report and Final Written Reprimand to Harry for poor work performance, and also to require Harry to complete an Individual Development Plan ("IDP").  *Id.* at 27-28.  The Employee Discipline Report warned Harry that failure to improve would result in further discipline, up to an including termination.  *Id.* at 026.  Harry contends that Melvin held a meeting with him about his annual evaluation on August 10, 2012, keeping him in her office, against his will, until after midnight.  Pl. MSJ App. at 6, ¶ 42.  At the meeting, Melvin allegedly repeated her criticisms regarding Harry's accent and personal characteristics, berating him to the point of tears.  *Id.*  Harry reported that Melvin's treatment of him constituted harassment, created a hostile work environment, and amounted to national origin discrimination.  *Id.*  Harry contends that Melvin issued the second Employee Discipline Report and IDP in retaliation for his complaints to others at DHA about Melvin's harassment and discrimination against him.  *Id.*

The IDP required Harry to complete several tasks over a sixty day period, including:  (1) ensure that Harry's cylinder completed all of its 2012 annual reviews by October 31, 2012; (2) attend professional development training events and webinars; (3) perform mandatory client file

screening and submit completed spreadsheet reports with attached copies of completed signed forms; and (4) ensure that quality control corrections are timely completed and submit bi-weekly written status reports beginning August 24, 2012. *Id.* at 027-28. DHA contends Harry did not perform all of the tasks required by the IDP. *Id.* at 005, ¶ 37. In particular, Harry allegedly failed to fully complete the third and fourth requirements, failing to submit spreadsheet reports or attach copies of completed signed forms for every client file screened and failing to provide the first two bi-weekly written status reports. *See id.*, ¶¶ 38-39. Allegedly, as a result of Harry's failure to complete all of the tasks as required, DHA fired Harry on October 5, 2012. *Id.*, ¶ 41. Harry disputes that he failed to complete all the tasks as required by the IDP. Pl. MSJ App. at 8, ¶56 & 11-13, ¶ 71.

Harry filed a discrimination charge with the Equal Employment Opportunity Commission on November 2, 2012, and he received a right to sue letter on July 9, 2013. Pl. First Am. Original Compl. [Docket Entry #32] at ¶ 27. He then filed a lawsuit in state court on September 30, 2013, which DHA removed to federal court on October 30, 2103. *See* Removal Notice [Docket Entry #1]. In his First Amended Original Complaint, which is his live pleading, Harry asserts claims for national origin discrimination and "wrongful dismissal" under Title VII. Pl. First Am. Original Compl. at 8, ¶¶ 31-36. DHA has moved for summary judgment on all of Harry's claims. The motion has been fully briefed, and the matter is ripe for determination.

## II.     PRELIMINARY MATTERS

### A.     Rule 56(d)

As a preliminary matter, Harry asserts that the Court should deny DHA's summary judgment motion under Fed. R. Civ. P. 56(d) because DHA has failed to produce evidence that he needs to prove his claims. *See* Pl. MSJ Resp. [Docket Entry #82] at 4-9. Rule 56(d) provides:

> [i]f a nonmovant shows by affidavit or declaration that, for
> specified reasons, it cannot present facts essential to justify its
> opposition, the court may: (1) defer considering the motion or deny
> it; (2) allow time to obtain affidavits or declarations or to take
> discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  This rule functions as a safe harbor to ensure that summary judgment is not granted prematurely.  *Bassknight v. Deutsche Bank Nat. Trust Co*., No. 3:12–CV–1412–M–BF, 2013 WL 1245563, at *1 (N.D. Tex. Mar. 4, 2013), *rec. adopted*, 2013 WL 1249580 (N.D. Tex. Mar. 26, 2013) (Lynn, J.).  It offers relief when a summary judgment nonmovant demonstrates that it has not had a full opportunity to conduct discovery.  *Byers v. Navarro Cnty.*, No. 3:09–CV–1792–D, 2011 WL 2586756, at *1 (N.D. Tex. June 30, 2011).  A nonmovant is not entitled to such relief if it has not diligently pursued discovery.  *Beattie v. Madison Cnty. Sch. Dist*., 254 F.3d 595, 606 (5th Cir. 2001).

In this case, Harry is not entitled to Rule 56(d) relief because he has not diligently pursued the discovery he now claims is essential to support his opposition to DHA's motion for summary judgment.  Harry contends that DHA has refused to produce evidence that would establish pretext, including all of his email communications with Melvin which contain the production data for his cylinder, and the spreadsheets required by his IDP.  *See* Pl. MSJ Resp. at 4.  However, the record establishes that he is not entitled to this discovery.

Harry served discovery requests on DHA in December 2014, seeking, among other things, "all communications by any means including e-mail, fax, mail, text message, hand written notes or any other form of communication, documented or recorded by any device that includes the words, Ibim, George, Harry, or all three names."  *See* Pl. Mot. Compel [Docket Entry #44] at 3-4.  DHA objected to this request as overbroad, unduly burdensome, and harassing.  *See* Def. Resp. to Mot. Compel [Docket Entry #48].  In response, Harry filed a

5

motion to compel DHA to respond to this, and other, discovery requests.  The Magistrate Judge

to whom the motion was referred denied the motion to compel, finding that Harry's request was

overbroad, unduly burdensome, and harassing.  *See* Order [Docket Entry #52].  Harry then tried

a different approach and filed a motion for leave to issue a subpoena to DHA's record custodian

to produce, among other things:

> all memoranda, email, fax, mail, text message, handwritten notes
> or any other form of communication, documented or recorded by
> any device that solicits, makes or requests or seeks information
> regarding, about or in any manner or form communicates
> complaints or commendations, issues directives or seeks
> retractions of directives from or to or about "Ibim Harry" "Ibim
> George Harry" or "iharry@dallasdha.com" "Harry Cylinder 2"
> "Harry Cylinder 3" from or to any employee, Occupancy
> Technicians, assistant administrator, supervisor, director, officer or
> other administrator.

Pl. Mot. For Subpoena [Docket Entry #57].  The Magistrate Judge denied Harry's motion for

leave to issue a subpoena as unnecessary because requests for documents from an opposing party

are normally made pursuant to a request for production under Federal Rule of Civil Procedure

34, rather than a subpoena duces tecum under Rule 45.  *See* Order [Docket Entry #61].

Contrary to Harry's arguments, DHA was never ordered to produce Harry's email

communications.  Rather, the Magistrate Judge's Order provided:

> Plaintiff's motion represents at least the second time he has sought
> to compel Defendant to produce records similar to those identified
> in the deposition notice attached to his motion. The court sustained
> Defendant's objections to Plaintiff's prior discovery requests, and
> Plaintiff has now limited some of his requests. Given that
> Defendant previously represented to the court that it was willing to
> allow a deposition on written questions of its records custodian, the
> court ORDERS counsel for both parties to confer by telephone no
> later than March 2, 2015 in an attempt to resolve this discovery
> dispute without further court intervention. Any attorney who fails
> to participate in the conference or negotiate in good faith will be
> subject to sanctions.

*Id.* at 1. The Magistrate Judge offered further observations to assist the parties in their negotiations, particularly with regard to the proper scope of comparator evidence.  *Id.* at 2.  The Magistrate Judge did not offer additional guidance or provide other instructions or orders regarding discovery of Harry's email communications.

Harry has had ample time to conduct discovery in this case.  The case was filed in September 2013, and the discovery period did not expire until March 10, 2015.  *See* Third Am. Sched. Order [Docket #56].  Harry never served a proper discovery request on DHA for email communications with Melvin which might contain production data for his cylinder and the spreadsheets required by his IDP, and he failed to avail himself of the opportunity to narrow his discovery requests that were found to be overbroad, unduly burdensome, and harassing.  To the extent Harry believes DHA failed to participate in a discovery conference or negotiate with him in good faith about his discovery requests, he failed to bring his concerns to the Court, except in the context of his summary judgment response.  Rule 56(d) does not provide relief to a litigant who, after reviewing his adversary's motion for summary judgment, realizes he should have conducted discovery in a different manner.  Accordingly, Harry's request to deny or delay DHA's summary judgment motion under Rule 56(d) is denied.

## B.     Scope of Claims at Issue

Harry contends DHA has "conceded" his claims of race discrimination, harassment, and wrongful dismissal, because its motion seeks summary judgment only as to his claims for national origin discrimination and retaliation.  Pl. MSJ Resp. at 1.  DHA disputes that Harry has pled a claim for race discrimination or harassment, or that he has an independent legal claim for wrongful dismissal.

Harry's First Amended Complaint asserts two causes of action for national origin discrimination and "wrongful dismissal."  Pl. First Am. Compl. [Docket Entry #32] at 8, ¶¶ 31-36.  His wrongful dismissal claim is that DHA "wrongfully terminated Plaintiff's employment because of Plaintiff's national origin and in retaliation for Plaintiff's complaint about Defendant's national origin discrimination against Plaintiff."  *Id.*, ¶ 35.  In his First Amended Complaint, Harry alleges that he is a "black African male of Nigerian Origin who was discriminated against . . . as a result of his race and national origin."  *Id.* at 2, ¶ 7.  He further alleges, in different places in his First Amended Complaint, that he was wrongfully terminated because of his race and national origin.  *Id.* at 2, ¶ 8 & 7, ¶ 26.  The Fifth Circuit has recognized that "[t]he line between national origin discrimination and racial discrimination is an extremely difficult one to trace." *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981).  Other courts in this district have observed that national origin and race discrimination claims are often so closely related as to be indistinguishable.  *Nwoko v. Texas Dep't of Protective and Regulatory Servs.*, 200 WL 1006759, at *5 (N.D. Tex. July 19, 2000).  Such a circumstance exists here.  Harry's national origin and race discrimination claims are so closely related they are practically indistinguishable.  Accordingly, the Court finds that Harry has asserted a claim for race discrimination, which it will consider together with Harry's claim for national origin discrimination. *See id.* ("As a person of Nigerian heritage, [the plaintiff] is likely to be racially grouped or identified with blacks, and therefore her national origin claim can be correlated with her race claim.").

The Court comes to a different conclusion with regard to Harry's alleged claim for harassment.  Claims for discrimination and harassment, or a hostile work environment, are not so closely related as to be indistinguishable from each other.  To the contrary, they are separate

8

causes of action with distinct elements and must be pled that way.  Harry's First Amended

Complaint does not identify a separate cause of action for harassment.  In fact, it uses the word

"harassment" only once when it pleads:

> Harry has suffered physical and emotional anxiety, stress, and
> continued low self- esteem. Harry was so troubled that he had to
> see a therapist to deal with the humiliation, intimidation,
> discrimination, *harassment* and retaliation meted out to Harry by
> Sherry Melvin and Sam Grader acting in their roles as supervisors
> in the position to make employment decisions with regard to
> Harry.

Pl. First Am. Compl. at 7, ¶ 25 (emphasis added).  The facts alleged do not demonstrate that

Harry intended to assert a separate cause of action for harassment.  The Court construes Harry's

First Amended Complaint as not asserting a cause of action for harassment, separate and distinct

from his claims for discrimination.  DHA's failure to move for summary judgment on an

unasserted claim for harassment is not a concession that a trial is necessary to adjudicate such a

claim.

## C.   Evidentiary Objections

DHA objects to significant portions of Harry's affidavit filed in support of his summary

judgment response, on grounds that the statements contained therein are speculative, conclusory,

and unsubstantiated.  *See* Def. MSJ Reply [Docket Entry # 90] at 9-11.  Because it would reach

the same decision whether or not it considered the allegedly inadmissible evidence or not, the

Court overrules DHA's objections as moot.

## III.   LEGAL STANDARDS

Summary judgment is warranted when the movant shows that there is no genuine dispute

of material fact as reflected in the pleadings, affidavits, and other summary judgment evidence,

and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Lujan*

*v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012).   The moving party bears the initial burden of demonstrating the absence of evidence supporting the nonmovant's claims. *Babcock v. Hartmarx Corp.*, 182 F.3d 336, 338 (5th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).   Once the moving party satisfies its initial burden, the burden shifts to the nonmovant to prove that summary judgment is not appropriate. *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 411 (N.D. Tex. 2009) (Lynn, J.) (citing *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991)).

The nonmovant must go beyond the pleadings and identify specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   In determining whether a genuine issue of material fact exists, all factual disputes will be interpreted in the light most favorable to the nonmovant, provided that both parties have introduced evidence showing that a dispute exists. *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).   A district court properly grants summary judgment if, when viewing all facts in the light most favorable to the nonmovant, it determines that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV.   ANALYSIS

Plaintiff brings his claims against DHA under Title VII, which makes it unlawful for an employer to discriminate against an employee based on the employee's race or national origin.  42 U.S.C. § 2000e-2.  Title VII also prohibits an employer from discriminating against an employee because the employee "opposed any practice made unlawful by Title VII" or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. *Id.*, § 2000e-3(a).  Harry may prove his claims for discrimination and retaliation by either direct or

10

circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Direct

evidence is evidence which, if believed, would prove the existence of unlawful discrimination or

retaliation without any inferences or presumptions. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d

893, 897 (5th Cir. 2002). Once direct evidence of discriminatory or retaliatory intent is

proffered, the burden shifts to DHA to prove by a preponderance of the evidence that the same

decision would have been reached absent the presence of an unlawful factor. *Fierros v. Texas

Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001). If there is no direct evidence, Harry must

establish a prima facie case of discrimination or retaliation using circumstantial evidence.

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If Harry meets this

burden, DHA must articulate a legitimate, non-discriminatory reason for the adverse

employment action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12

(5th Cir. 2007). The burden then shifts back to Harry to rebut DHA's explanation by showing

either pretext or mixed motives. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir.

2004). With these general principles in mind, the Court turns to the parties' specific arguments.

### A.   Race and National Origin Discrimination

As direct evidence of discrimination, Harry points to his affidavit testimony that Melvin

used training, coaching and counseling sessions to berate him, calling him "arrogant, animated,

aggressive, and intimidating." Pl. MSJ Resp. App. [Docket Entry #86] at 3, ¶ 19. He explains

that when he asked what she meant by "animated," Melvin told him that "your eyes pop out,"

"your nose flares," and "your manner of speaking is very offensive to me." *Id.*, ¶ 20. She further

advised him to "communicate with people more in writing because it is less offensive." *Id.*

Melvin also allegedly made similar statements about Harry's appearance and manner of speaking

during his annual evaluation in August 2012, before he was put on the IDP. *Id.* at 17, ¶ 101.

When he told Melvin she was attacking traits he could not change, she responded, "you have been in the United States for a long time now, why can't you adapt?" *Id.* at 18, ¶104.  While rude, none of these statements constitute direct evidence of discrimination.

Direct evidence is evidence that demonstrates discriminatory motive, without the need for inferences or presumptions. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n. 3 (5th Cir. 2003).  Not every comment that reflects a negative attitude toward a protected characteristic is probative of intentional discrimination.  *Mooney v. Aramco Services, Inc.*, 54 F.3d 1207, 1217 n. 12 (5th Cir. 1995).  Only comments that, on their face, show that an improper criterion served as a basis for an adverse employment decision constitute direct evidence.  *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).  In this case, none of the statements which Harry identifies as direct evidence of discrimination refer to his race or national origin.  Nor are the identified statements directly and unambiguously related to the decision to terminate Harry's employment.  Rather, an inference or presumption is required to connect Melvin's alleged comments to Harry's race or national origin and to the decision to fire him.

Because Harry has failed to identify direct evidence of discrimination, he must prove his case under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, and its progeny.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Russell*, 235 F.3d at 222.  To establish a prima facie case of discrimination, Harry must show that he (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class, or that other similarly situated individuals were treated more favorably. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).  Here, the evidence is undisputed that Harry is black and Nigerian; he was qualified for his position as Administrator for DHA's Housing Choice Voucher

Program; he was terminated; and he was replaced by Chad Baker, a white male. *See* Pl. MSJ

App. at 066, 074. Harry has thus satisfied his initial burden.

DHA has likewise satisfied its burden to articulate a legitimate, non-discriminatory

reason for firing Harry: poor work performance, including failure to complete all of the tasks

required by the IDP. Specifically, DHA contends that Harry failed to comply with all the terms

of the IDP because he (1) did not submit required spreadsheets in a timely fashion; (2) did not

submit copies of completed and signed forms for every file screened; and (3) failed to provide

Melvin with bi-weekly written status reports on August 24, 2012 and September 7, 2012. Def.

MSJ App. at 031; *see also id.* at 006, ¶¶ 37-41 & 29-30. Poor performance and noncompliance

with a performance improvement plan are legitimate, nondiscriminatory reasons for terminating

an employee. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999); *Conaty

v. Brocade Commc'n Sys., Inc*., 2009 WL 937044, at \*6 (N.D. Tex. Apr.7, 2009); *Young v. Comp

USA*, 2004 WL 992577, at \*4 (N.D. Tex. Apr. 30, 2004). The continued viability of Harry's

discrimination claims thus turns on the issue of pretext.

To withstand summary judgment, Harry must offer sufficient evidence to create a

genuine issue of material fact that DHA's proffered reason for his termination is not true, but is

instead a pretext for discrimination. *Rachid*, 376 F.3d at 312. He may satisfy this burden by

presenting evidence that DHA's reason was (1) factually baseless; (2) not the actual motivation

for the discharge; or (3) insufficient to motivate the discharge. *See Acker v. Deboer, Inc.*, 429

F.Supp.3d 828, 842 (N.D. Tex. 2006) (citing cases). Harry must point to specific facts sufficient

to cast doubt on the veracity of the reasons offered by DHA; his subjective belief that DHA is

lying or that he was discriminated against is insufficient to establish pretext. *See Little v.

Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991).

Here, Harry attempts to establish pretext by pointing out that, during this litigation, DHA

submitted conflicting statements regarding his termination.  First, he points to a statement by

Melvin in response to an interrogatory served during discovery that:

> Although some actions [required by the IDP] were completed, Mr.
> Harry *still had not submitted complete, filled out spreadsheet*
> *reports* regarding the mandatory client file screening requirement.
> He had also *failed to provide a written status report* to the director
> to ensure that quality control corrections had been completed by
> the due date of the IDP. It *was also unknown* whether Mr. Harry
> had completed required webinar training that had been assigned to
> him.

Pl. MSJ Resp. Br. at 16-17 (emphasis added).  Harry then points to Melvin's affidavit filed in

support of DHA's summary judgment motion:

> Mr. Harry failed to submit any of the spreadsheet reports *in a*
> *timely fashion, and he also failed to submit copies of the completed*
> *and signed forms for every file screened.*
>
> Also, Mr. Harry failed to provide me with the bi-weekly written
> status reports that were due on August 24, 2012 and September 7,
> 2012, and *did not provide his first report until September 10, 2012.*

*Id.* at 17 (emphasis added).  Inconsistent reasons for an adverse employment action offered by an

employer at different times can create a fact issue as to pretext.  *See Gee v. Principi*, 289 F.3d

342, 347-48 (5th Cir. 2002).  But Melvin's explanations regarding Harry's failure to complete

the requirements of the IDP, while not identical, are not materially inconsistent.  Both statements

explain that Harry failed to satisfy the same requirements of the IDP.  To the extent the

statements differ, the differences are not sufficient to raise a genuine fact issue as to pretext.

Harry also provides his own sworn testimony disputing Melvin's statements.  He

contends that he submitted all spreadsheet reports and forms as requested and began submitting

the quality control reports prior to the first deadline.  Pl. MSJ App. at 012-13.  However, Harry

has no evidence to substantiate his testimony, and unsubstantiated statements are not sufficient to

create a genuine fact question on pretext. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment). Harry suggests that the reason he lacks evidence to substantiate his claims is because Melvin failed to keep accurate records of his compliance with the IDP. Pl. MSJ Resp. Br. at 17. Again, however, there is no evidence to support this assertion. Harry further argues that he does not have the necessary evidence because DHA failed to respond to his discovery requests, but, as explained above, Harry never served a proper discovery request on DHA for his email communications with Melvin which could contain production data for his cylinder or the spreadsheets required by his IDP.

Harry also disputes DHA's evidence of other discipline issues and complaints against him. Conduct that occurred prior to Melvin's issuance of the IDP cannot be related to Harry's failure to satisfy the requirements of the IDP, and the Court does not rely on evidence of such conduct in its determination of the pending summary judgment motion.

DHA is entitled to summary judgment on Harry's claims for race and national origin discrimination under Title VII because Harry does not raise a genuine fact issue as to whether DHA's proffered reason for his termination is pretext for discrimination.

### B.   Retaliation

The Court comes to a similar conclusion with respect to Harry's retaliation claim. To establish a prima facie case of retaliation, Harry must show that: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *See Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). DHA challenges Harry's ability to prove the first prong of this test. Harry responds that Melvin retaliated against him by issuing the IDP that led to his termination

after he accused her of harassment and discrimination during the twelve-hour long annual

evaluation on August 10, 2012.   Pl. MSJ Resp. App. at 006, ¶ 43.

Protected activity includes opposition to any practice rendered unlawful by Title VII.

*Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).   To be protected, Harry must

have had at least a reasonable belief that the practices he opposed were unlawful.   *Walker v.*

*Norris Cylinder Co.*, 2005 WL 2278080, at *10 (N.D. Tex. Sept. 19, 2005).   Complaining about

harassment or discrimination based on something other than membership in a protected class is

not protected activity.   In this case, Harry complained of harassment and discrimination based on

his communication skills, accent, facial expressions, and manner of speaking.   Pl. MSJ Resp.

App. at 006, ¶ 43.   According to Harry, Melvin found his accent "offensive" and objected to his

"animated" appearance when speaking, particularly his eyes popping out and his nose flaring.

*See* Pl. MSJ Resp. App. at 003, ¶ 20; 8, ¶ 52.   Harry's accent and manner of speaking are not

protected characteristics, and complaining about harassment based on those things does not

constitute protected activity.   Harry's conclusory and self-serving statement that he told Melvin

her conduct amounted to national origin discrimination does not convert Harry's complaint into

actionable protected activity.   Even if Harry subjectively believed that Melvin's conduct

violated Title VII, his belief would not have been objectively reasonable.   *See Wilson v. Delta*

*State Univ.*, 2005 WL 1939678, at *3 (5th Cir. Aug. 12, 2005) (employee's belief about

employment practice is not reasonable if it is settled law that practice is not unlawful within Title

VII).

Assuming that Harry could establish a prima facie case of retaliation, DHA has produced

evidence of a legitimate, nondiscriminatory reason for firing him:   poor performance and failure

to complete all the tasks required by his IDP.   Harry must therefore produce evidence that would

16

permit a reasonable jury to find that he would not have been fired "but for" his complaint to Melvin that she was discriminating against him. *Walker*, 2005 WL 2278080, at *9. Harry has not met this burden. He relies on the same evidence that the Court has concluded above is insufficient to raise a genuine issue of fact concerning his discriminatory termination claim. For similar reasons, the Court holds that this evidence is also insufficient to enable a reasonable jury to find that DHA terminated Harry for any reason other than his failure to complete all of the tasks required by the IDP. DHA is therefore entitled to summary judgment dismissing Harry's Title VII retaliation claim.

## V.    CONCLUSION

DHA's Motion for Summary Judgment [Docket Entry #76] is GRANTED, and Harry's claims are dismissed with prejudice.

SO ORDERED.

January 5, 2016.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**